UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KERRY L. MARSHALL, | : |
| | : |
| Plaintiff, | : |
| v. | : 3:07cv1079 (MRK) |
| | : |
| TOWN OF MIDDLEFIELD, ANNE. L. | : |
| OLSZEWSKI and JANE DOE, | : |
| | : |
| Defendants. | : |

**MEMORANDUM OF DECISION**

Pending before the Court is Defendants' Motion for Summary Judgment [doc. # 37] and Plaintiff's Motion for Summary Judgment [doc. # 44]. Plaintiff Kerry Marshall brings this suit under 42 U.S.C. § 1983 for violations of his First and Fourteenth Amendment rights, under the Connecticut Constitution, and under state law for intentional infliction of emotional distress and defamation. *See* Amended Complaint [doc. # 9]. For the reasons that follow, Defendants' Motion for Summary Judgment [doc. # 37] is GRANTED and Plaintiff's Motion for Summary Judgment [doc. # 44] is DENIED.

**I.**

Under Connecticut state law, motor vehicles are subject to a local property tax. *See* Conn. Gen. Stat. § 12-122. Each year, the Tax Assessor of each town in Connecticut publishes a Grand List of all of the taxable property in that town. *See id.* § 12-55. The town then sets the "mill rate"[1] and bills are sent to residents. If a tax bill becomes delinquent, the town can place a hold with the Connecticut DMV which prohibits registration of that individual's vehicles until the taxes are paid

---

[1] A mill is 1/1000 of a dollar. For example a mill of 25 would mean $ 25 per every $ 1000 assessed.

in full. As a Middlefield resident since 1986, Mr. Marshall is subject to the motor vehicle tax in the Town of Middlefield.

In 1996, Mr. Marshall purchased a 1995 Dodge Intrepid, which he owned until it was completely destroyed in an accident in July 1998. Mr. Marshall claims that he paid the final tax bill for the Dodge Intrepid on September 11, 2000; neither the Town nor Mr. Marshall can locate a record of this payment. Between 2000 and 2004, Mr. Marshall successfully registered several vehicles, leading him to believe that there was no hold filed with the Connecticut DMV and hence no taxes due. However, upon purchase of a Chevy Blazer in 2004, he was informed that he could not register the vehicle because of a delinquent tax bill for the Dodge Intrepid. Records show that he paid the 1998 taxes on the Dodge Intrepid on December 30, 2005, although not without some conflict between Mr. Marshall and the Tax Collector for the Town of Middlefield, Anne Olszewski. Mr. Marshall believes that the bill he paid on December 30, 2005 was fraudulent and essentially made up by Ms. Olszewski. Ms. Olszewski, of course, denies this. After Mr. Marshall paid the 1998 taxes on the Dodge Intrepid, it appears he was allowed to register the Chevy Blazer as well as another vehicle, a Lexus.

At approximately the same time, Mr. Marshall became aware of another delinquent tax bill in New Britain. This tax bill was purportedly for the 1997 taxes on the Dodge Intrepid even though Mr. Marshall had never lived in New Britain. Apparently, for some unknown reason, the Connecticut DMV had reported the registration of the Dodge Intrepid to New Britain for the 1997 Grand List. Mr. Marshall believes that the New Britain tax bill was somehow instigated by Ms. Olszewski, although there is no evidence that supports this theory. Regardless, Mr. Marshall convinced New Britain that he had never been a resident there, and the Town issued Mr. Marshall

an abatement. According to Defendants, New Britain then transferred the tax bill to the Town of Middlefield. Mr. Marshall believes that this tax bill, too, was fraudulent.

When Mr. Marshall attempted to renew his registration on the Chevy Blazer in September 2006, he was told that he could not do so until he paid the 1997 taxes on the Dodge Intrepid that had been transferred from New Britain. This precipitated a series of incidents between Ms. Olszewski and Mr. Marshall in which Mr. Marshall attempted to pay the taxes owed on the Chevy Blazer and Ms. Olszewski informed him that she could not accept payment for the Chevy Blazer until he paid the taxes on the Dodge Intrepid. Connecticut state law requires Mr. Marshall to pay the earlier-owed taxes before he can pay the later-owed taxes. *See* Conn. Gen. Stat. § 12-146.

The final incident occurred in April or May 2007 when Mr. Marshall went to the Middlefield tax office with his father in order to try to pay the tax bill on the Chevy Blazer. Ms. Olszewski refused payment again on the grounds that he first had to pay his tax bill on the Dodge Intrepid. According to Ms. Olszewski, a shouting match ensued and she had to call the police. Mr. Marshall denies that he raised his voice or that the police were called.

Mr. Marshall did not pay the tax bill and according to Middlefield, Mr. Marshall still owes $ 611.99 in motor vehicle taxes. He has not been permitted to register the Chevy Blazer or any other vehicle because of the delinquent tax bill. In Mr. Marshall's view, he has already paid the taxes on the Dodge Intrepid twice – once on September 11, 2000 and a second time on December 30, 2005. Mr. Marshall believes that Ms. Olszewski is "running a racket" and is "bent on defrauding the plaintiff of money for her own benefit and using motor vehicle taxes as a pretext." Pl.'s Mem. in Support of Summ. J. [doc. # 45] at 9. Mr. Marshall seeks $ 4,500,000 in damages, an injunction preventing "abuses and discrimination by Middlefield Tax Collectors" and allowing him to register

his Chevy Blazer Truck after all "properly assessed" taxes have been paid, and attorney's fees and costs.

II.

Mr. Marshall makes two First Amendment arguments. First, he argues that there is a First Amendment right to operate a motor vehicle. Second, he argues that by denying him the ability to register his vehicle because of his alleged failure to pay taxes, Defendants have violated his freedom of association because he can no longer "associate" at the DMV, which in his view is a public forum. Mr. Marshall also makes two claims under the Equal Protection Clause of the Fourteenth Amendment. He makes a "class-of-one" claim under *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), and he also alleges that Defendants discriminated against him because of his race.

The Court is skeptical that Mr. Marshall has established a constitutional violation under either the First or the Fourteenth Amendment. However, the Court does not reach the merits of Mr. Marshall's federal constitutional claims because the Court concludes that it lacks jurisdiction to consider them pursuant to the Tax Injunction Act, 28 U.S.C. § 1341 and the principle of comity that underlies that statute. The Tax Injunction Act ("TIA") states:

> The district court shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such state.

The TIA "is rooted in principles of federalism and in recognition of a state's need to administer its own fiscal operations, and was written primarily to limit federal-court interference with local tax matters." *Bernard v. Village of Spring Valley*, 30 F.3d 294, 297 (2d Cir. 1994). Although the TIA by its terms prohibits only injunctive and declaratory relief, the Supreme Court has made clear that "taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity

of state tax systems in federal courts." *Fair Assessment in re Al Estate Ass'n v. McNary*, 454 U.S. 100, 116 (1981); *see also Nat'l Private Truck Council v. Okla. Tax Comm'n*, 515 U.S. 582, 587 (1995) ("Congress never authorized federal courts to entertain damages actions under § 1983 against state taxes when state law furnishes an adequate legal remedy."); *See Bernard*, 30 F.3d at 297 ("[F]ederal courts are precluded from exercising jurisdiction over challenges to state tax assessments, regardless of the type of relief sought."). Thus, if Mr. Marshall's claims are properly considered a challenge to the assessment, levy or collection of a tax and if there is a plain, speedy and efficient remedy in state court, this Court lacks jurisdiction to consider his claims for both injunctive relief and for damages. *See Elfire v. Spray*, No. 05cv803(MRK), 2005 WL 2648678, at * 2-3 (D. Conn. Oct. 12, 2005).

Mr. Marshall attempts to characterize his claims as a challenge to the unequal and malicious treatment he received by Middlefield officials and not as a challenge to the tax itself. However, "[b]asing a complaint upon alleged violation of civil rights, 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983 or of the Federal Constitution will not avoid the prohibition contained in Section 1341." *Hickmann v. Wujick*, 488 F.2d 875, 876 (2d Cir. 1973); *see also Rosewell v. La Salle Nat'l Bank*, 450 U.S. 503, 510 (1981) (rejecting claim under Equal Protection Clause because of the TIA); *California v. Grace Brethren Church*, 457 U.S. 393, 396 (1982) (rejecting claim under the First Amendment because of the TIA); *Wright v. Pappas*, 256 F.3d 635, 636 (7th Cir. 2001) (rejecting claim of racial discrimination under § 1983 because of TIA); *Lawyer v. Hilton Head Pub. Serv. Dist. No. 1*, 220 F.3d 298, 300 (4th Cir. 2000) (same). Underlying all of Mr. Marshall's federal constitutional claims is his belief that the taxes he allegedly owes are fraudulent. In other words, he challenges both the *levy* of the taxes, claiming that he already paid them, and the *collection* of the

taxes, claiming that Ms. Olszewski maliciously refused to accept payment for the taxes due on the Chevy Blazer because he had yet to pay the taxes due on the Dodge Intrepid. He essentially seeks an order from the Court enjoining Defendants from collecting the taxes they allege are due and ordering Defendants to give him an abatement so that he can register his vehicles. The fact that Mr. Marshall claims that the levy and collection of the taxes violates his constitutional rights, or that he professes to seek only damages, does not change the nature his claims.[2] As the Supreme Court has explained in the context of a damages action under § 1983, "[t]he recovery of damages under the Civil Rights Act first requires a 'declaration' or determination of the unconstitutionality of a state tax scheme that would halt its operation. And damages actions, no less than actions for an injunction, would hale state officers into federal court every time a taxpayer alleged the requisite elements of a § 1983 claim." *Fair Assessment*, 454 U.S. at 116. Therefore, the Court is convinced that Mr. Marshall's claims constitute a challenge to "the assessment, levy or collection of any tax under State law."[3]

The only remaining question, then, is whether Mr. Marshall has a plain, speedy, and efficient remedy under state law. A remedy is considered plain, speedy, and efficient if it "provides the taxpayer with a full hearing and judicial determination at which [he] may raise any and all

---

[2] Mr. Marshall relies heavily upon *Luessenhop v. Clinton County*, 466 F.3d 259 (2d Cir. 2006) for the proposition that his claims are not barred by the TIA. In that case, homeowners brought suit claiming that the notice of foreclosure provided by the taxing authority of a state was constitutionally inadequate. The Second Circuit held that the TIA did not bar the claim because the plaintiffs were not attempting to avoid paying taxes. As the Court explained, "in enacting the TIA, Congress trained its attention on taxpayers who sought to avoid paying their tax bill by pursuing a challenge route other than the one specified by the taxing authority." That is precisely what Mr. Marshall attempts to do here.

[3] State taxation includes local taxation because "[l]ocal taxes are imposed under authority of state law." *Hibbs v. Winn*, 542 U.S. 88, 100 (2004).

constitutional objections to the tax." *Grace Brethren Church*, 457 U.S. at 411(quotation marks omitted). As it turns out, Connecticut law provides several remedies that give a taxpayer an opportunity to raise constitutional objections. *See Finizie v. City of Bridgeport*, 880 F. Supp. 89, 94 (D. Conn. 1995); *see also Elfire*, 2005 WL 2648678, at * 2. Perhaps most relevantly, Conn. Gen. Stat. § 12-129 allows a taxpayer to "pay a tax under protest and raise constitutional challenges in an action to obtain a refund." *Finizie*, 880 F. Supp. at 94; *see Barnes v. E-Systems*, 501 U.S. 1301, 1303 (1991) ("[R]efund relief alone may constitute a plain, speedy and efficient remedy") (quotation marks omitted)). There is no evidence that Mr. Marshall was thwarted in his attempt to utilize these state law provisions and the Court will not hold the TIA inapplicable because of "mere speculation" that state courts will not entertain the suit. *See Franchise Tax Bd. v. Alcan Aluminium*, 493 U.S. 331, 341 (1990). Because Mr. Marshall has a plain, speedy, and efficient remedy under state law – through he may raise all of his constitutional claims, including his very serious allegation of racial discrimination – this Court lacks jurisdiction to consider his federal constitutional claims.

## III.

Mr. Marshall has also brought state law claims under the Connecticut Constitution and for intentional infliction of emotional distress and defamation. However, because the Court has granted summary judgment on all of Mr. Marshall's federal constitutional claims, the Court declines to exercise supplemental jurisdiction over his state law claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if –(3) the district court has dismissed all claims over which it has original jurisdiction . . . ."). As this Court has previously stated, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine – judicial economy,

convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Hernandez v. Carbone*, 567 F. Supp. 2d 320, 333-34 (D. Conn. 2008) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003)). The Court has not identified any factors that would counsel in favor of exercising supplemental jurisdiction over Mr. Marshall's state law claims. Therefore, the Court concludes that the exercise of supplemental jurisdiction is not appropriate.

## IV.

The Court recognizes Mr. Marshall's genuine frustration with the tax collection system, and is well aware that Mr. Marshall feels aggrieved, whether rightly or wrongly, by the Town of Middlefield and Ms. Olszewski. By issuing this decision, the Court makes no judgment about the merits of Mr. Marshall's underlying federal or state constitutional claims. Because this Court lacks jurisdiction to hear Mr. Marshall's claims, the Court has not determined the merits of any of Mr. Marshall's claims, which he remains free to pursue in state court. Defendants' Motion for Summary Judgment [doc. # 37] is **GRANTED** to the extent that the Court concludes that it lacks jurisdiction over Mr. Marshall's claims, and accordingly, Plaintiff's Motion for Summary Judgment [doc. # 44] is **DENIED**. Mr. Marshall's Motion to Strike [doc. # 64] an exhibit attached to Defendants' Motion for Summary Judgment is **DENIED** as moot. **The Clerk is directed to close this file.**

IT IS SO ORDERED.

/s/     Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: December 5, 2008.**